UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: PROPECIA (FINASTERIDE) PRODUCTS LIABILITY LITIGATION | Master File No.: 1:12-md-02331-JG-VVP<br>MDL No. 2331 |
| This Document Relates to All Cases | Honorable John Gleeson |

**PLAINTIFFS' APPLICATION FOR ENTRY OF PLAINTIFFS' ORGANIZATIONAL STRUCTURE AND PPO NO. 2**

**APPLICATION**

On May 3, 2012 this Court entered an Order setting the Initial Status Conference for May 30, 2012. In anticipation of that Status Conference, Plaintiffs' Counsel from around the country met to discuss formation of an Organizational Structure to oversee the efficient prosecution of this Multi-District Litigation ("MDL"). At the Initial Status Conference, Plaintiffs' Counsel discussed the proposed leadership structure with the Court, including the fact the proposal had broad support amongst Plaintiffs' counsel from around the country. Plaintiffs now submit this Application for Entry of Organizational Structure and Practice and Procedure Order [Proposed] No. 2. Plaintiffs ask the Court to adopt the Proposed Organizational Structure discussed below and set forth in the attached Procedure and Practice Order Number 2.

The Proposed Leadership Structure reflects the *unanimous consent* of all known Plaintiffs' Counsel with a case on file in the federal court system whose claims are subject to the Judicial Panel on Multidistrict Litigation's ("JPML") April 16, 2012 Order consolidating these cases. As discussed at the Status Conference, prior to submitting this Application with the Court, Plaintiffs supplied Defendants a copy for their review; Defendants do not object to the Proposed Organizational Structure. As set forth in detail below, the Proposed Leadership Structure will ensure the prompt, efficient and cost-effective resolution of these cases. The lawyers who make

up the Proposed Leadership Structure are competent to guide this litigation from beginning to end. Finally, the undersigned is not aware of *any* plaintiffs' lawyer with a case on file in the federal court system who objects to this Application. Accordingly, the Proposed Leadership encourages the Court to enter PPO No. 2 so as to commence the efficient, prompt and cost effective resolution of these cases.

**MEMORANDUM IN SUPPORT OF ENTRY
OF THE PROPOSED ORGANIZATIONAL STRUCTURE**

**INTRODUCTION**

The instant Multi-District Litigation ("MDL") concerns allegations that Defendants – Merck & Co., Inc. and Merck Sharpe & Dohme (collectively "Merck" or "Defendants") – designed, manufactured, and sold products containing Finasteride (Propecia and Proscar) which caused a number of serious side effects including, but not limited to, erectile dysfunction and related sexual disorders. Plaintiffs generally allege Merck's warnings related to the likelihood of experiencing erectile dysfunction/sexual disorders while on Propecia/Proscar, as well as the risk associated with experiencing on-going problems following discontinuation of use, were inadequate. Given the importance of these issues to the current and future plaintiffs within this MDL, a diverse group of Plaintiffs' counsel, representing *all known Plaintiffs with a case on file in the Federal Court system,* coalesced around the Proposed Leadership discussed herein.

On April 16, 2012, the JPML transferred some two dozen cases to this Court for coordinated and consolidated pre-trial proceedings. The Movants to this Application – consisting of counsel for all known federally filed cases – respectfully request that this Court appoint the leadership structure described below. Specifically, Movants ask the Court to appoint a five member Executive Committee ("EC") and ten member Plaintiffs' Steering Committee ("PSC") (two of whom will serve as Co-Liaison Counsel) (collectively "Proposed Leadership"). The

unanimity of support by all Plaintiffs' Counsel for this approach evidences that the Proposed Leadership will ensure the efficient prosecution of this case. Additionally, the proposed structure is made up of experienced counsel with the greatest knowledge and understanding of this case – i.e., the same lawyers who have been on the front lines of these cases from their very inception.

## ARGUMENT

The *Manual for Complex Litigation* (Fourth) (the *"Manual")* provides significant guidance regarding the organization of complex MDL litigation, including the responsibilities and duties of counsel appointed to lead the case, the importance of "designating" counsel, and the various organizational structures of Plaintiff's counsel. *See Manual* at §§ 10.2, 10.21, 10.22, 10.221 and 10.224. The Proposed Leadership squarely aligns with the *Manual's* teachings.

### I.     Background

Members of the Proposed Leadership were at the forefront of this litigation since the first nationwide filings. Specifically, the Proposed Executive Committee is made up of individuals (and their respective Firms) who filed the very first Propecia case in Federal Court (February, 2011), the second (May, 2011), and one earliest (Summer, 2011). Many of these same lawyers have worked together throughout the pre-MDL period to efficiently advance the litigation. For example, two of the Proposed Executive Committee members filed a Joint Motion to Consolidate several claims pending in the Western District of Washington under Rule 42 of the Federal Rules of Civil Procedure. Similarly, in January, 2012 after Plaintiffs moved to consolidate the case before the JPML, lawyers from throughout the country began to coalesce as a potential leadership group. That process continued through the spring of 2012. Today, Plaintiffs' counsel from all over the country currently representing 100% of the filed Finasteride (Propecia/Proscar) actions in Federal Court have endorsed the Proposed Leadership structure.

Since the transfer order was issued by the JPML, the members of the Proposed Executive Committee have conducted numerous phone conferences related to the formation of a Plaintiffs' Organizational Structure. On May 9, 2012 the Firms making up the Executive and Steering Committees met to discuss an assortment of issues including the proposed organizational structure. Each of the Firms at that meeting endorsed the proposal. The Firms at that meeting were represented by lawyers with numerous years of experience in mass tort MDLs and coordinated litigations that span both pharmaceutical and medical device cases including: *In re Baycol* (MDL No. 1431); *In re Vioxx* (MDL No. 1657); *In re Chantix* (MDL No. 2092); *In re Avandia* (MDL No. 1871); *In re Levaquin* (New Jersey State Court Liaison Counsel); *In re Guidant Heart Device Litigations* (MDLs No. 1708 and 1905); *In re Medtronic Heart Device* (MDL No. 1726); *In re Transvaginal Mesh* (MDL No. 2326); *In re Zimmer NexGen Knee* (MDL No. 2272); *In re DePuy ASR Implant* (MDL No. 2197); and *In re DePuy Pinnacle Hip Implant* (MDL No. 2244). Every participant was given an opportunity to speak and express views on the most efficient and effective method to litigate this MDL. The result was a unanimous agreement to propose a simple Organizational Structure comprised of a five (5) member Executive Committee and ten (10) member Plaintiff Steering Committee (two of whom would also serve as Co-Liaison counsel).

  II. *Plaintiffs' Application for The Proposed Leadership Structure Will Ensure the Prompt, Efficient and Cost-Effective Resolution of this Case.*

   A. *An Overview of the Proposed Leadership Structure.*

The Proposed Leadership is recommended, in large part, because of their ability to work together. The proposal unanimously supported by all Plaintiffs' counsel is as follows:

4

**Plaintiffs' Executive Committee**:

    Timothy Becker – Johnson Becker, PLLC, Minneapolis, MN

    Marc Grossman - Sanders Viener Grossman, LLP, Mineola, NY

    Trent Miracle - Simmons Browder Gianaris Angelides & Barnerd, LLC, Alton, IL

    Theodore Laszlo - Laszlo Law, Boulder, CO

    Alan Milstein - Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., Morrestown, NJ

**Plaintiffs' Steering Committee:**

    John Romano – Romano Law Group, Lake Worth, FL

    Mark Dicello – The Dicello Law Firm, Mentor, OH

    Mike Galpern – Locks Law Firm, Cherry Hill, NJ

    David Kuttles – The Lanier Law Firm, New York, NY

    Roger Orlando – The Orlando Firm, P.C., Decatur, GA

    Tracy Rezvani - Finkelstein Thompson, LLP, Washington, DC

    Benedict Morelli - Morelli Ratner, P.C., New York, NY

    Jayne Conroy – Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP, New York, NY

    Matt Sill – Sill Law Group, Edmond, OK

    Martin Crump – Davis & Crump, Gulfport, MS

**Co-Liaison Counsel**:

    Benedict Morelli – Morelli Ratner, P.C., New York, NY

    Jayne Conroy - Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP, New York, NY

    B.  *The Proposed Leadership Structure is Well Suited to Lead this Case.*

The Proposed Leadership represents a coalition of Plaintiffs' counsel well-suited to lead this MDL. The group consists of counsel with substantial experience and extraordinary success in representing the interests of Plaintiffs in other similar, complex pharmaceutical and medical

5

device litigations. For example, of the fifteen (15) law firms, nearly half have acted as Lead Counsel or Co-Lead Counsel in at least one mass tort MDL or coordinated mass tort litigation. As a result of their collective expertise and national reputations, these lawyers have successfully represented thousands of injured claimants from around the United States in mass tort lawsuits.

The criteria guiding the Court's evaluation to appoint a leadership applications strongly weights in favor of appointing the proposed group. For example, the attorneys in this group:

(a) Represent the vast majority (if not all) of the Plaintiffs currently filed in federal court;

(b) Individually and collectively possess specific expertise with respect to complex mass tort litigation;

(c) Have been recognized as national leaders in the mass litigation field, and possess substantial MDL litigation experience in medical drug and device litigation;

(d) Have shown their ability to effectively and conscientiously handle this genre of litigation for many years and in numerous challenging cases;

(e) Are supported by every Firm that has filed appearances in these cases on behalf of the various Plaintiffs; and

(f) Have performed substantial work identifying and investigating the claims in this litigation, endowing them with a significant base of case specific knowledge.

No one else and no other group can offer the collective resources, the collective experience, or the collective skill possessed by the Proposed Leadership structure. The Proposed Leadership structure is streamlined and efficient. This litigation already involves dozens of cases, with potentially hundreds, if not thousands, more to be filed. The volume of documents at issue and the number of potential depositions are significant and will require the mobilization and coordination of efforts and the resources of multiple firms. Accordingly, the Movants herein recommend this Proposed Leadership structure so as to maximize the effectiveness of the representation of injured Plaintiffs, especially against a sizable opposing party like Merck. The Proposed Leadership, led by the Executive Committee as its spokespersons to the Court and

Defendants, will be responsible for all major strategic decisions, coordinating workflow among all plaintiffs' counsel, and ensuring the efficient use of resources while minimizing the duplication of efforts. *See* MCL 4th § 10.22.

### III. *Applying the Applicable Legal Standards*

The *Manual* suggests a variety of factors for the Court to consider when appointing a leadership structure. These factors are similar to the criteria outlined in Rule 23(g)(1) of the Federal Rules of Civil Procedure regarding the appointment of class counsel. Rule 23(g)(1) directs district courts to appoint class counsel who will "fairly and adequately represent the interests of the class" after consideration of the following factors in appointing class counsel:

- the work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
- counsel's knowledge of the applicable law; and
- the resources counsel will commit to representing the class.

*See* Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Where there are competing applications for appointment of class counsel, a court must appoint counsel "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

As explained below, the attorneys in the Proposed Leadership individually and collectively satisfy each of the factors enumerated in Rule 23(g)(1) and the *Manual*. The success of these attorneys and Firms in leading these types of cases is attributable to their experience and qualifications, their ability to manage large-scale litigation such as this, and their willingness to devote the necessary resources to prosecute these types of actions to successful conclusion. Likewise, the Proposed Leadership is of optimal size to advance the interests of the Plaintiffs in this litigation and protect the Plaintiffs' interests against well-resourced Defendants.

> A. *The Firms Comprising the Proposed Leadership Have Performed Substantial Work Identifying and Investigating Claims and Potential Claims in This Action.*

In considering a motion for appointment of lead counsel or interim class counsel, a court must consider the work undertaken by that counsel in the case. *See e.g., Harrington* v. *City of Albuquerque,* 222 F.R.D. 505, 520 (D.N.M. 2004) (appointing class counsel who had "done significant work in [the] case"). Here, the Proposed Leadership group has already invested substantial time and resources related to this litigation. Among other things, the Proposed Leadership has:

- researched and identified the claims at issue;
- arranged multiple informational group meetings;
- spoken with hundreds of potential Plaintiffs;
- worked with lawyers from various state court proceedings in an effort to cooperate with overlapping issues in the state and federal claims;
- worked with experts in the early development of theories of liability and causation;
- worked with counsel for Merck for the purpose of attempting to resolve preliminary issues raised in this litigation; and
- drafted preliminary written discovery.

Among the attorney work product tasks completed by the Proposed Leadership is: a) the creation of a preliminary data bank of scientific studies regarding finasteride in general, and Propecia/Proscar in particular; and b) the creation of a database of Plaintiffs, cross referencing the various types of injuries and adverse events. In short, the Proposed Leadership group has proceeded with significant efforts to advance the interests of the Plaintiffs in this litigation.

1. <u>The Proposed Leadership Group Will Commit the Resources Necessary to Coordinate the Efforts and Progress of all Actions in this MDL Proceeding</u>.

The Proposed Leadership Group indisputably has the resources necessary to adequately represent the Plaintiffs in these cases and to foster this important litigation to a successful conclusion. As explained below, each of the Firms comprising the Proposed Leadership possess significant financial resources, most are substantial in size, and all have pledged sufficient legal and support personnel to aggressively litigate these cases. Specifically, the members of the Proposed Leadership group all committed to contributing substantial financial sums into a fund for common benefit expenses upon an Order appointing an Organizational Structure. Additionally, well before the JPML hearing and the centralization of this litigation, certain members of the Proposed Leadership made significant financial contributions to advance the early stages of the case. Finally, the Proposed Leadership is uniquely situated to cooperate with actions pending in state court given that several Firms filed cases in both venues. In short, the Proposed Leadership will be able to effectively and efficiently prosecute these claims in this action and cooperate with all other actions that are not only part of this MDL proceeding, but also part of the state court proceedings.

2. <u>The Firms Comprising the Proposed Leadership Group Have Substantial Experience in Successfully Litigating These Types of Actions</u>.

The attorneys and law firms comprising the Proposed Leadership Group have substantial experience in litigating claims similar to those here and possess knowledge of the applicable law. As demonstrated herein, each of the Firms comprising the Proposed Leadership has experience and expertise in handling complex litigation actions and complex litigation, as well as, in particular, medical device cases. *See Affidavit of Randi Kassan, Esq.* attached as Exhibit A

(attaching the Individual Application and/or Individual or Firm Summary Biography or Curriculum Vitae for each member of the proposed leadership).

## CONCLUSION

The Court should select, intact, the Joint Prosecution group as the Plaintiffs' Steering Committee for this litigation. As demonstrated herein, the Joint Prosecution Group unquestionably satisfies all the suggested requisites articulated in the *Manual for Complex Litigation* as well as Rule 23(g) of the Federal Rules of Civil Procedure and is clearly qualified, using any or all of the applicable criteria traditionally employed in this selection process.

Dated:  June 7, 2012                              Respectfully submitted,

/s/  Timothy J. Becker
Timothy J. Becker, Esq.
Johnson Becker, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, MN 55402
Phone: (612) 333-4662
Fax: (612) 339-8168
Email: tbecker@johnsonbecker.com

Marc D. Grossman, Esq.
Sanders Viener Grossman, LLP
100 Herricks Road
Mineola, NY, 11501
Phone:  (516) 741-5252
Fax:  (516) 741-0799
Email:  mgrossman@thesandersfirm.com

Trent B. Miracle, Esq.
Simmons Browder Gianaris
Angelides & Barnerd, LLC
One Court Street
Alton, IL  62002
Phone:  (618) 259-2222
Fax:  (618) 259-2251
Email:  tmiracle@simmonsfirm.com

Theodore E. Laszlo, Jr., Esq.
Lazlo Law
2595 Canyon Blvd., Suite 210
Boulder, CO  80302
Phone:  (303) 926-0410
Fax:  (303) 443-0758
Email:  tlaszlo@laszlolaw.com

Alan C. Milstein, Esq.
Sherman Silverstein Kohl Rose & Podolsky
East Gate Center
308 Harper Drive – Suite 200
Moorestown, NJ  08057
Phone:  (856) 662-0700
Fax:  (856) 488-4744
Email:  amilstein@shermansilverstein.com

***Plaintiffs' Executive Committee***